U.S. v. Sharif Maloney and Mr. Morimura will stand right where he is. May I please the Court, my name is A. Anthony Thomas, I'm the Assistant Federal Public Defender representing the appellant, Mr. Sharif Maloney, who is present in court today. I respectfully request three minutes for rebuttal time. Thank you. This case is about a crime that Mr. Maloney never committed. This case is about a car that Mr. Maloney never owned. This case... The car was titled in his name, right? That's correct, Your Honor. So how did it get titled in his name? He received the title in his name, Your Honor, for the simple fact that he was doing a favor for a friend. And obviously, now Mr. Maloney realized that you cannot always do favors for a friend, you have to exercise better judgment. Let's start with the first alleged violation, that he's questioned by officers on the street for not having his peddler's license, and the alleged violation is that he should have reported that. The violation, the standard condition of violation requires Mr. Maloney to report within 72 hours any arrest or question by law enforcement. We will submit, Your Honor, that there was insufficient evidence to prove Mr. Maloney guilty of that violation. He was questioned, but I would assume your argument is that this is so small, if you and I are questioned on the street, we don't think of that as something that, even if we had an obligation to report, we wouldn't necessarily report. That can happen any time. Is that the point? That is the point, Your Honor, but I would also like to make an additional point. I stayed up last night until around about 1.30, going back over the record, and I reviewed Officer Meese's testimony with regards to this allegation. Nothing in the record, Your Honor, nothing in the record points to the fact that Mr. Maloney was questioned. I was mistaken by assuming that he was questioned, but there was no evidence. You mean questioned by the officer who... That's correct, Your Honor. You don't mean that trial. Not a trial. That was questioned by the court enforcement officer. Secondly, Your Honor, the probation officer knew that Mr. Maloney is a street vendor. They have visited Mr. Maloney at his stand on numerous occasions. It's a routine practice or a routine occurrence for either the city court, code enforcement, or city police to go down the street and make sure everybody is in compliance with the law. On this particular day, according to the allegation, Mr. Maloney's driver's license was blocked by additional merchandises on his car. The evidence at the district court level does not reveal that Mr. Maloney was ever questioned, and I can point, Your Honor, to the exact location where Officer Meese spoke with regards to whether Mr. Just tell us the page and we'll get it. I don't want to take your time. Certainly. It is record page number 51, lines 15 to 20. That's the appendix page. That's the appendix. I'm sorry, Your Honor. Page 51. Volume 1. From my standpoint, I don't find this the major issue. I'm more concerned about eluding the police. Could you go to that? Certainly, Your Honor. If it's all right with my colleagues. Go to that and then we'll come back to another. Do you want to go back to the? Let's hear about eluding first. Yeah. Okay. Let me ask you a basic question. I just want to ask the government. Would it have been enough for him to have had one probation violation? I mean, one supervised police requirement. That was violated. Yeah. The court found three of the four that were charged. But if he had only found one, would the law, as you understand it, have still enabled the court to find violation of the supervisory release condition? That's absolutely correct. The law only needed to find one violation. All right. So in a sense, even if the not reporting was minor and hence did not warrant this big sentence as a result, it wouldn't have mattered if the probation government can prove any of the others, right? That's correct. But it's our position that the government did not. There was insufficient evidence. Can I just supplement? Sure. If I may, just supplement that. You wait for your reply brief to do it. But in your reply brief, you say that if any of the three violations is overturned, we should remand to the district court to see if it would have exacted the same sentence it did. Is that correct? In other words, any one of the three violations can result in his going back in. But the question is the severity? The only violation that could be remanded with regards to questioning, with regards to resentencing, is whether Mr. Maloney was questioned. Because the alluding police and this court should sustain that. Inside that alluding charge is the allegation that Mr. Maloney was the driver, which includes violation number two, that he did not report to probation, that he idled or drove the car. We understand that there's a factual, that you're contesting the facts underlying the finding. The point is, if there's any one of the three, do we just affirm? Or if we find that one of the three, for example, there really was not enough evidence to find that, but the other two stand, do we still remand or do we just say, do we just affirm? We would respectfully request that this court remand for sentencing, for the simple fact that the sentence that was driven, the reason why Mr. Maloney received such a severe sentence, it was driven by the grade B violation, which is deluding. We would hope that this court reversed on all three. We understand that. With regards to Your Honor's question with regards to deluding, we would submit, Your Honor, that the identification procedure employed by the trooper was violating Mr. Maloney's constitutional right. Secondly, we would submit that the evidence was insufficient to sustain that violation. I don't know why it's such a big deal. I was on the street yesterday, and I looked very closely at an African-American man who had long hair, put together up here, and then it came down, and I couldn't tell whether they were brave or whether they were something else. I mean, the officer, it's not such an obvious distinction. Why is that such an important aspect of your challenge to the identification? It's an important aspect, Your Honor, from the standpoint of at what particular point did that crucial fact was revealed. In the trooper's report, it was silent with regards to any dreadlocks or any braids. It wasn't until at least two months later during the hearing when the lower court asked the trooper the question. It was then revealed that what stuck out was the dreadlocks. But even that, Your Honor, if you look closely at the dialogue between the court and the trooper, the court asked, why do you call the dreadlock trooper? That was the one thing that stuck out. So after the pursuit, I knew it was a black male with dreadlocks. So that statement alone basically says that, well, he saw somebody with long hair that looked like dreadlocks, and because maybe he's in Newark, he assumed it was a black person with dreadlocks. But the identity itself and the sufficiency of the evidence and the constitutional violations still fall for the simple fact that the identification was unduly suggestive or unnecessarily suggestive. Suggestive in the sense that what the trooper did was- He got the picture. Right. And that is certainly suggestive, and no question about that. But what else could he have done? I mean, looking at it from the trooper's standpoint, he's trying to identify who was driving the car. He knew the license plate. He went and looked it up. Why is that a constitutional violation? It's a constitutional violation, Your Honor, because outside of it being suggestive, it was unnecessary. The government has not put forward any reason as to why a less suggestive mean could not have been applied. What would be less suggestive? A less suggestive mean could have been employed. For example, it's okay if the trooper did whatever preliminary research he did or investigation that he conducted. But at the point that he's sole witness to this event, at the point where he's forced to look at photographs, at some particular point, someone, maybe his partner or individual that was in the car with him, someone should have stepped in and perhaps presented a photo right so the trooper that saw the car fleeing could have made an appropriate identification. But this didn't happen here. What was the sentence? The sentence was 12 months in jail. Did he serve that already? He already served his sentence, Your Honor. So what is the appeal? If he already served the sentence, what is there that this court could do even if we agreed with you? Your Honor, if this court agrees with me, this court should reverse all three determinations. What remedy is available? Mr. Maloney is presently still on supervisory lease. At any particular point, there is a potential for violation. That's to be very careful. If there's any violation, there's a potential that he could be sentenced to jail for additional term of incarceration. But he's on supervisory lease for violation of another crime, because of another crime. I mean, he's not on supervisory lease because he eluded the police in this case. May I answer? Absolutely. You're on our time. What Justice Mandel did when he sentenced Mr. Maloney to 12 months in jail is he continued supervisory lease. He continued it for an additional year after Mr. Maloney is released. I see. You mean, he was in jail on what was the original crime? The original charge, Your Honor, was felony possession. Okay, he was convicted of that. That's correct. And he got a supervised release. He got jail time and a supervised release time. Three years of supervised release, which would have expired on January 11th of this year. And there wasn't an underlying conviction with regards to the looting, because, number one, it was a federal matter. The state, however, dismissed the looting charge. Well, they do that when the feds come in. Judge Collins had a question that I think I stepped on, so go ahead. With respect to violation one, I'm not quite clear. Is it your position that Mr. Maloney was not questioned or that being given a summons didn't constitute action within the range of the rule that he was trying to enforce? Would you report if within 72 hours he had been arrested or questioned? Yes, Your Honor, it's our position that Mr. Maloney was not questioned. There wasn't sufficient evidence to establish that. As I pointed to the exact site where the probation officer spoke or testified with regards to what transpired, what the probation officer testified to is that because Mr. Maloney came in contact with law enforcement, he should report that. But that's not the standard condition of supervised release. The standard condition of supervised release specifically speaks to the fact that within 72 hours of arrest or question by law enforcement. Now, if Mr. Maloney had signed a supplemental condition that says any contact or contact with law enforcement, then fine. We can understand why the probation officer would want to prosecute that particular condition. You're not contesting that he was handed a summons? He received a summons, Your Honor. That's absolutely correct. Now, there's no evidence with regards to how the information got on the summons. As I indicated, Mr. Maloney had his peddler's license. I'm not concerned about whether he had another license. It seems to me you're focusing on what the intercommunication was between the officer and Mr. Maloney. The giving of the summons, I take it we understand that the officer handed a summons to Mr. Maloney, or are you saying that that's not clear? According to the evidence below, Your Honor, from the probation officer, the summons was handed to Mr. Maloney. There is no evidence, Your Honor, with regards to whether there's actual questioning or interrogatory that took place. In my submission, I assumed that and I was incorrect. It wasn't until last night when I finally, when I reviewed the record again, I noticed this glaring error. I apologize for that. But the issue now is, is there wasn't sufficient evidence to conclude that Mr. Maloney violated any of these conditions of evidence. Thank you. Thank you. And did you call him? No, no. Okay. We'll get you back on the phone. Are Laura Marcos still, Your Honors, representing the government? Would you answer the last point that Mr. Thomas made, which is that there's nothing, as I understand this point, he says there was no communication between the officer and Mr. Maloney. There was no communication between Mr. Maloney and the issuing officer with respect to the summons. And therefore, there's nothing in the record to, no evidence in the record to sustain the first violation of supervisory release. I think that's a fair, is that a fair statement? Yes, Your Honor. It's the first time that I've heard it. It certainly wasn't raised before the district court or in the opening brief or in the reply. Well, we've read it until one o'clock. Let's leave it at that. Okay. Your Honors, I think that this was based on the summons itself, Your Honor. It's my understanding that pretty much, again, under a preponderance of the evidence standard, the assumption was that if a newer police officer comes up and gives you a summons for not having a peddler's license, that at some point he asks you, do you have a license? Well, but there's no testimony that he did that. No, there's testimony that a newer police officer, as he testified, that a newer police officer gave him a summons personally. What is the language of the condition of supervisory release that is at issue? Your Honor, that violation requires that he report, quote, you shall notify the probation office within 72 hours of being arrested or questioned by a law enforcement officer. Okay. Now, Mr. Thomas says he wasn't arrested. He wasn't arrested. And there's no evidence that he was questioned. Yes. And is there evidence that he was – is there actual evidence that he was questioned? The evidence that he received a summons, which has information on it concerning his name and presumably his address. I mean, again, this was not an issue at the trial, so the record may be a little bit sparse. But by a preponderance of the evidence, not beyond a reasonable doubt, by a preponderance of the evidence, if you receive a ticket from a law enforcement officer for not having something, you can assume that the officer asked you, do you have this or where is this? Can we sustain a finding of violation on the basis of an assumption? Well, Your Honor, I mean, some assumptions – there are certainly presumptions that arise based on the circumstances. I've never heard of an instance where an officer will be in front of someone and not question them in the course – I mean, he's not going to stand there silently and write a ticket and never ask for the thing that it is that needs to be shown. I mean, it's just sort of common sense, it seems to me, and I think that's what the district court was relying on. But again, it's kind of hard to say because I haven't really sort of combed the record for this since it wasn't an issue. May I contribute this? Sure. We have on page 145 of the record, we have a statement by the defendant. Now, there's some question as to what the character of that statement is. That is, there was some discussion as to whether this was testimony and it was not regarded as something that could be cross-examined. It was an exercise of the defendant's right of allocution. But what he said was, as far as the summons at issue, it's like weed vendors and police or code enforcement. Like randomly, they will like question you. They will ask for your peddler's license. On this date, he asked me for my peddler's license and I presented them that. But they saw that I didn't have a plate and so forth, like a plate has to be displayed on your court. And the judge at the end of the statement and a little farther down the page says, it wasn't an arrest but it sounds like they questioned you. And then he issued a summons because they decided to issue a summons based on what they saw and what you told them. Is that right? Yes. And so when you're questioned by law enforcement, was it your requirement to report that to probation? And then the defendant explains that he didn't understand. I appreciate the help, Judge Pollack. And again, it wasn't one of the areas I was necessarily anticipating coming in, but I certainly appreciate the help there. Well, I don't know how much help it really offers you. Let me ask you this. Don't we really have a question as to what the rule meant that he was to observe? And that, I take it, is a question of law, is it not? Yeah, I think that is the crux of the issue for that particular one. And if there's some uncertainty as to what the legal requirement is, then problems of vagueness may sneak in or whatever. Yes, Your Honor, I would respond on two levels for that. On the first level, I think the language itself is clear on its face. I mean, it says any questioning or arrest. On the other hand, there is a rule of reason to some extent. And it is our position that pretty much the defendant is really acting at his own peril when he makes the judgment call, rather than reporting each instance to the probation officer. There's still a rule of reason in terms of determining whether that's a violation. Yes, and that's where the district court comes in, Your Honor. And I think the Supreme Court case that I cited in my brief gives that kind of flavor, where it says that conditions of probation are often vague. And they talked about not consorting with improper people or something of that nature. That was an alleged violation, too, and he was found not liable for that one. Yes, no, I meant the Supreme Court case that I cited in my brief talked about how conditions of probation are sometimes vague and that what you want to do is you leave something up to the district court to decide whether it's significant enough that you're going to violate. And here, that was the determination that Judge Simandl made. Let me understand that. Are you saying that it's a discretionary matter which this court can't review, except on an abuse of discretion level, as to what the requirement was, what the legal requirement was? The requirement is a legal question. But the district court inherently has some discretion, if there's a violation, to determine whether it's significant enough that he will, in fact, violate. Judge Simandl could have, for example, said, you know what, I find this to be a violation of the rule, but it's not significant enough, and I'm not going to violate him, and that's within his discretion. He had to determine whether this particular non-reporting was significant enough that it should be a violation. And I think there were several reasons why he did in this instance. Suppose Judge Simandl had decided that the rule didn't cover this conduct. That would have been home free. That would have been a ruling of law. Home free, unless the government appealed that determination. Except for the other two violations. Yes. Obviously, there are three violations we're talking about, but for this individual one, I don't think we can appeal on acquittal, Your Honor, if that was it. We're just discussing whether the government could appeal that. Judge Sloviter is doubtful about that. If you have a dismissal of an indictment on the grounds that the statute doesn't cover the conduct charge, don't we have an appealable issue? Well, maybe we don't need to resolve that right now. But what I'm really puzzled about is that it seems to me conceivable that you might have district judges taking differing views as to what the same requirement covered as a matter of law. And I wonder if we really have clarity enough in this rule. Well, Your Honor, I think that the rule itself on its face is clear, and that everyone is on notice that when they are questioned by a law enforcement officer, they should report it. There's no question that individual probation officers are going to exercise their discretion differently in terms of whether or not to report a failure as a violation, depending on whether they consider it severe enough. I understand, but Mr. Nisi ultimately isn't going to be the law interpreter, is he? Right. And there are going to be district court judges who are going to interpret differently whether or not, in their judgment, this is severe enough to punish someone. Mr. Murlock, if I may move you to another point, the question arose, Mr. Judge Sloboda's question, of Mr. Thomas's position as to whether this court is to remand or simply to affirm if we were to conclude that maybe one of the findings was defective but the other two were all right. And I notice you invoke a Fifth Circuit case, which seems to suggest that it's a matter of, it doesn't matter, one of the grounds is not sustained. I'm puzzled. Is that really a sound statement of the law? Your Honor, certainly if all that's being challenged is the fact of violation, then any one of the three would have been sufficient for the district court. Except that, oh, go ahead. No, no, finish it. Except that, as I understood Judge Garza's opinion in English, he specified that the district court had found that any one, or that the proper finding would itself be sufficient to sustain the revocation. And I take it the sentence that followed. We have no such statement by Judge Simandl here, do we? We have no reason to be confident that he would have imposed the same sentence. Well, Your Honor, I do think it's a different question. I think when I made the argument for English, I stated that there was no argument in the opening brief challenging the sentence, only the fact of revocation. Of the three violations, the most significant was the Greg B violation, was it not? Absolutely, Your Honor. That was eluding the police. Yes, I think the concession on the other side, which I certainly accept, is that that's what drove the sentence here. The state law violation of eluding the officer. Do we know that for sure? We don't know that for sure. I mean, there certainly are indications in the record where, at the sentencing hearing when he discussed it, he said that that was the most serious, but he did not say that but for that the sentence would be identical. But if the district court knew that violation number one could not be supported as a matter of law because the violation is in vague terms and therefore that wouldn't stand up, and the district court thought that there was some ambiguity with respect to the other violation, and I think, isn't this the case in which the district court said, if my standard was beyond a reasonable doubt, I would not sustain the government's position, but because it's preponderance of the evidence I do, from which I gather that the district court had some question as to the other violations, why shouldn't we remand, so if we think that violation number one has a legal problem, so that the district court can reconsider the imposition of the sentence? Just to clarify the facts, when the judge was discussing the preponderance of the evidence issue versus beyond a reasonable doubt, he was discussing the alluding, he wasn't... That's right, that's exactly my point, that if that factual finding was somewhat questionable, not only because of the amount, and I can understand the district court having read it, the district court, if I had been the judge, I couldn't have found beyond a reasonable doubt, but my view of beyond a reasonable doubt is not necessarily that of my own court, because I'm dissented and aggrieved, but leaving that aside, I'm not sure I understand, what is your position as to what we should do? Well, okay, if the concession is accepted that what's driving this sentence is the alluding charge, then I think you can find whatever happened on the other one harmless error, and I think you can do it two different ways. One, you can conclude that it didn't drive the sentence, but the second thing that you really can conclude on this record is that regardless of whether it's technically a violation or not, Judge Simandl understood what was happening here. I mean, he understood... The facts were pretty much undisputed, so the notion that he would have sort of increased the sentence based on what was either just a technical violation or not, it doesn't really kind of make sense in the real world. I don't understand your answer. Judge Simandl understood that what happened here was that the guy was issued a summons and he didn't tell his probation officer that, and whatever severity you attach to that doesn't necessarily come from your belief about whether or not this is a technical violation or not, unless that's the only thing this person has done. But my hypothesis is that if you have to throw out the finding of that violation, that's my... we may not have to, but that's my hypothesis, then isn't it relevant that the district court specifically said on the record, there's some question about the nature of the proof as to the other violations? Well, Your Honor, he found it by the relevant legal standard, so he's not going to throw out the alluding charge if he thinks there's a technical legal problem with the earlier one. He's still concluded that this was the individual who was driving the car on that day, and so his quibble... There was a lot of evidence on the other side in this case. I mean, I don't remember a case on a supervised release issue in which there was this much... different witnesses came in and said he wasn't driving? No, but in the end, Your Honor, Judge Samantha was presented with a binary choice. He had to decide either it was the defendant or it was this person, Rajan Ali... Ali, his close brother, whatever that means. Yes, and basically he would have had to have concluded that the officer was lying because the one thing that the officer... No, not necessarily lying. Let's say mistaken. Well, the one thing the officer noticed was the braids or dreadlocks, and everyone testified that Rajan Ali did not have braids or dreadlocks, so by a positive... But your dreadlocks were so important to Officer Arroyo. Why did he leave it out of his report? Your Honor, I can't... You would think you would put in a report the things that are significant to you. Your Honor, that was certainly grist for cross-examination. It was certainly followed up, and Judge Samantha had to make a factual finding, and the factual finding he made was that the officer was being truthful, and I think that, obviously, there's... based on credibility, and that's something that this... I don't think anybody... This is not a kind of case which is any suggestion that the officers were lying. We have other cases in this sitting in which you could say, you know, they thought exigent circumstances, et cetera. This is not a case like that. I don't think anybody is suggesting that Arroyo purposely... I mean, the question is whether he saw... He had a good enough view, and he saw the defendant for a long enough time that he could make an identification based on one photograph that was pulled out of the record. Is that a fair statement of... I hope? Yes. And this isn't the case where there's any... I don't think the officer was lying. No, and I don't think that, obviously, Judge Samantha didn't either, but, in other words, it is important, though, to remember that the defense in this case, of which there was a lot, all centered on this one other person, and their testimony was that two people said that this other person confessed to them. The defendant said that, and his girlfriend said that. Confessed to them that? That he was the driver on the night in question. Ali said? Yes, that Ali said to them that he was the driver on the night in question. Isn't that good testimony on behalf of Mr. Maloney? It absolutely is, if it's believable. But in order to believe that, then the one thing that Officer Arroyo said that he saw, he couldn't have seen because it's, you know... And also, Officer Arroyo testified that Summer Moffera, the young girl, said that she admitted that it was Maloney driving, not Ali. And now she's one of the witnesses who says it was Ali. But, you know, the small point I'm trying to make here, and I apologize if I wasn't as succinct as I could have been, is that in order to believe the defense theory, which really was a binary choice here, Officer Arroyo had to be at least mistaken about the one feature he said he saw, because everybody said that Mr. Ali didn't have that. And their theory was Ali confessed to being the driver. So it's not just a case of misidentification. There were a hundred people out there. It could have been, and no one knows. It was this person or that person. Thank you, Your Honor. May I ask one question before you go? I take it that the government agrees with the defendant that there is an issue, a justiciable issue to be resolved. The fact that the defendant has served his sentence doesn't mean that there are no collateral consequences. I wanted to jump on the move, Mr. Your Honor. But in looking at the sentence that was imposed, Judge Sneddall imposed a year and a day plus one additional year of supervised release. And that is being served now. So it is not moved, unfortunately. For the government. For the government, yes. Thank you. Mr. Warren. No. Mr. Thomas. Your Honor. I'm sorry. Go ahead. Your Honor, with regards to the alluding charge and with regards to the identification process, could the trooper have been mistaken? Absolutely. He observed four black male in the car. Could one of those four black male have had dreadlocks? We now know that Mr. Maloney does not have dreadlocks. He has braids. But they don't look so different. Unless they're different. They're hanging down. They are different. The men, wonderful hair. And they're hanging down. Right. But dreadlocks are a little more kinkier. A little more uncomfortable. But from a distance. And then even though there was a spotlight on it. If we look at the distance, Your Honor, and the time. What was the distance? The distance was between 30 to 40 yards. Was it yards or feet? Yards, Your Honor. That would equate to 90 to 120. Right. Thank you. Can you give us some idea? Is that from one end of the bench to the other? I think it would be longer than that. Because as a former football player, I would hope that that was 40 yards. But it's a little bit longer than that, Your Honor. We can't ask on the record for what team. From here to the back of the courtroom, it's not even 30 yards. Certainly not 40. It's not 40. Okay. The other thing that constricts the observation of who's driving is that the car is turned onto another one lane. The car was turned. Turned and left. And as we all know, there's the suicide barriers that prevent either people from throwing things off the highway. And it's at night. Yeah, but there was a spotlight. The spotlight from the car. The spotlight from the car. We would submit, Your Honor, that based on these versus Biggers, and based on Brownlee, the opinion that – Brownlee was actually a little bit different. That was an identification of somebody on the spot where they could have had a light up, but they didn't. Here it's a police officer at night. But there's a host of other evidence, is there not, that Carl was in the title and did the name of Mr. Maloney. That's absolutely correct. And there was, at least at one point, the testimony of a person that he was driving the car the day before. The testimony about Mr. Maloney driving the car came from Summers for Friar and Mr. Rajan Ali, who, incidentally, the following night, early in the morning, according to the trooper, was stopped by the trooper. Summers was driving the vehicle. Mr. Ali has short hair. Mr. Ali has short hair, yes. During that confrontation, after the alleged looting, Mr. Ali falsified his information to the police officer, and Summers also falsified information to the police officer. So we have individuals who are not honest with the trooper. I see that my – No, go ahead. We have individuals who are not honest with the trooper. But the issue here, Your Honor, is whether, by the clearly erroneous standard, whether all three violations should be reversed. We submit that under the clearly erroneous standard, given all deference to the lower court with regards to the factual finding, with regards to the credibility issue, this court can still review the entire record to determine whether there was a clear and definite mistake. I don't see how we can reverse the fact that the car was titled in his name. I mean, that is, to me, just plain. And whatever reason he may give, the fact is the car was titled in his name. If it's titled in his name, but also there was some evidence, was there not, that there were two other cars titled in his name? That's correct, Your Honor. And he does not dispute ownership of those other two. And on your reports, it's pretty clear you've got to report those, right? What you have to report is that you own the vehicle or you have driven in it. According to the jurisdiction – If the car is titled in my name, I own it. If my car is titled in my name and I own it, in this particular factual situation, Your Honor, what we have is evidence that was shown at the lower court that there were multiple people that the car was registered to. There was evidence shown that Mr. Maloney was not the person that purchased the car. Afterwards, there was evidence shown that Mr. Maloney, the registration was taken out of Mr. Maloney's name. If we look at state law, Your Honor, and that's what we have to look at in order to determine who owned the car, there is a rebuttable presumption under state law that Mr. Maloney owned the car. But we have provided sufficient evidence that he wasn't the owner. His girlfriend admits that Mr. Maloney is too cheap to purchase a $13,000 car. There's evidence that's been submitted that Mr. Maloney never drove the car and never had access to the car. But he could have followed, that's right, should he not have noted it saying why the car was titled in his name and the other two cars as well. We're not here just to correct one factual issue. We're not here with regards to the other two cars. I understand. The point is if you've got something, you're supposed to do a report each month, is that right? That's correct, Your Honor. Of your assets, I assume that's one of the things that goes on the report. I assume so, Your Honor. And one asset or something that's at least titled in his name is this car. It is titled in his name, Your Honor, but under the specific section of the form that he had to fill out, it requires that Mr. Maloney own or drove the car. And we submit, Your Honor, that it was not specific. But under state law, if something is titled in my name, I own it. Under DMV laws, right? No, Your Honor. There's a presumption of ownership, which can be rebutted. Are you sure about that? Absolutely, Your Honor. That you can own a car. What you're saying is you can own a car that's not titled in your name, and you cannot own a car even if it is titled in your name. No. I'm sorry. Well, maybe I can stop. You can title a car, but you may not be the owner of the vehicle. Okay. Thank you very much. Thank you, Your Honor. We'll take this matter under advisement. I'm sure Mr. Maloney. Can I just ask one other question? Of the additional 12 months of supervised release, how much time is left of that? His supervised release expires, I believe, April of 2008. Okay. And I'm sure he knows that he has to be very careful from now until April. I mean, he should be careful forever, but especially careful from now until 2008. Thank you. Thank you, Your Honor. Do you want to take a break? No, please. Oh, we'll take a five-minute break. No. Okay. The Court will take a five-minute break. Mr. Maloney. Mr. Morimarko, it's a hard-working morning for you. Thank you. Thank you. I'll get the calendar. How? How? How? We should all get lunch. Yeah, we'll see how much time we have. We'll have lunch together. Got it? There you go. All right, that'll do. All right.